[Cite as *In re G.S.*, 2011-Ohio-2158.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 96158, 96159, and 96160**

---

# IN RE: G.S., ET AL.
# Minor Children

# [APPEAL BY: L.F., MOTHER]

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 09912146, AD 09912147, and AD 09912149

**BEFORE:**    Sweeney, J., Celebrezze, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:**   May 5, 2011

**ATTORNEY FOR APPELLANT**

Dale M. Hartman, Esq.
2195 South Green Road
University Heights, Ohio 44121

**ATTORNEYS FOR APPELLEES**

**FOR C.C.D.C.F.S.**

William D. Mason
Cuyahoga County Prosecutor
By: Gina S. Lowe, Esq.
Assistant County Prosecutor
C.C.D.C.F.S.
4261 Fulton Parkway
Cleveland, Ohio 44144

**ATTORNEY FOR CHILDREN**

Mark Witt, Esq.
6209 Barton Road
North Olmsted, Ohio 44070

**GUARDIAN AD LITEM**

Paul Berman, Esq.
Guardian Ad Litem for Child
24105 Duffield Road
Cleveland, Ohio 44122

JAMES J. SWEENEY, J.:

{¶ 1} Appellant L.F.[1] ("Mother") appeals the juvenile court's judgment that granted permanent custody of three of her children, G.S. (born September 24, 1999), J.S. (born December 14, 2000), and D.F. (born December 28, 2004), to the Cuyahoga County Department of Children and Family Services ("CCDCFS").

{¶ 2} On July 6, 2009, CCDCFS sought permanent custody of G.S., J.S., and D.F. alleging they were neglected and dependent as defined in R.C. 2151.03 and R.C. 2151.04. It was alleged that Gregory S. ("Gregory") was the father of G.S. and J.S. and that Wayne W. or "John Doe" was the alleged father of D.F. None of the fathers or alleged fathers have appealed from the judgment that granted permanent custody of the children to CCDCFS. The record documents several unsuccessful attempts to serve Gregory, after which service was made by publication with regard to the custody proceedings involving G.S. and J.S.

{¶ 3} The record contains transcripts of proceedings that took place on the following dates: July 6, 2009; July 22, 2009; April 13, 2010; June 22, 2010; and December 2, 2010.

---

[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

{¶ 4} On April 13, 2010, the court held a hearing on CCDCFS's complaint for neglect, dependency, and permanent custody. Mother attended the hearing with her counsel. The parties stipulated to various amendments to the original complaint, which were placed on the record. These amendments included:

- Allegation 1 altered the second sentence to read that Mother "was convicted of three counts of attempted child endangering on November 4, 2009."

- Allegation 2 was removed.

- Allegation 3 was altered to provide that "Mother has a substance abuse problem, specifically alcohol, which interferes with her ability to provide appropriate care and a permanent home for the children. She participated in a substance abuse program in 2008, but relapsed."

- Allegation 4 was altered to provide, "Mother has been diagnosed with depression and was receiving counseling with her children through Berea Children's Home."

- Previous Allegation 5 was omitted in its entirety.

{¶ 5} All of the remaining allegations of the original complaint remained unchanged. Based on the stipulations of the parties, including the above agreed amendments to the original complaint, Mother admitted the second half of allegation 1 as well as allegations 2 through 5. Due to the above-stipulations, allegation 5 became, "The children have been removed from the mother's care twice in the past due to her substance abuse issues.

See case numbers AD02903397-98 and AD06901434-36." Mother's counsel confirmed that Mother agreed to the amendments and would enter an admission to the amended complaint. Mother independently advised the court that she understood the amendments and intended to enter an admission as stated. Mother confirmed that she had a copy of the amended complaint in front of her. The court then advised Mother of her right to have a trial on the complaint as well as her rights to counsel, to subpoena and cross-examine witnesses, her right to remain silent, and that the CCDCFS bore the burden of proving the allegations by clear and convincing evidence. Mother indicated that she was not under the influence of anything that would affect her ability to understand the proceedings. Mother was advised that if CCDCFS proves the allegations of the complaint by clear and convincing evidence "all parental rights would be severed and the children would be free to be placed for adoption." The court then heard testimony of a CCDCFS intake worker, Phyllis Richardson ("Richardson"), and Officer Keith Sanicky ("Sanicky").

{¶ 6} Richardson testified that Gregory is the father of G.S. and J.S. According to Richardson, CCDCFS had concerns over Gregory's ability to parent the children due to his substance abuse problem. During Richardson's investigation, Gregory was reportedly in rehab for alcohol and

marijuana abuse. Mother reported to Richardson that Gregory did not have any contact with the children. Richardson identified Wayne W. as the father of D.F. but indicated he had not established paternity. Richardson had no contact with Wayne W. and was told that he had no contact with D.F. Mother did not cross-examine this witness.

{¶ 7} Sanicky testified that on June 2, 2009, he was working as a Parma police officer and responded to a call involving Mother. A daycare facility was uncomfortable releasing the children to Mother due to her being disoriented. Sanicky observed Mother staggering as she walked and she appeared to not know where she was. Mother's car had severe front-end damage. When Sanicky attempted to speak with Mother, she kept repeating that she exchanged information with the other driver and that her insurance was current. She was otherwise non-responsive to Sanicky's inquiries. Sanicky contacted the fire department to examine her in case of a medical emergency. Sanicky also attempted to administer a field sobriety test due to Mother's behavior and an odor of alcohol on her breath; however, she refused all field sobriety testing. Mother was arrested for child endangering due to her intoxication. Because Sanicky and the daycare were unable to reach any family members, the children were taken to children services.

{¶ 8} Based on Mother's stipulations and admissions to allegations 2

through 5 and the second half of allegation 1 of the complaint as amended, as well as the testimony from the social worker and the arresting officer, the court found that CCDCFS proved by clear and convincing evidence that the children were neglected and dependent and they were adjudicated as such. The children were committed to the temporary custody of CCDCFS pending disposition.

{¶ 9} The proceedings from June 22, 2010 reflect that Gregory appeared in court, was appointed counsel, and advised of the proceedings. At that time, the matters were continued for disposition and also to allow the court to conduct an in camera discussion with the children. Gregory was notified of the trial date and instructed to keep in touch with his assigned counsel.

{¶ 10} The court held the dispositional hearing on December 2, 2010, which was attended by mother, her counsel, Gregory's counsel, the prosecuting attorney, counsel for the children, the guardian ad litem for the children, the guardian ad litem for mother, and the social worker.

{¶ 11} The testimony from the April adjudicatory hearing was incorporated without objection. There were no objections or concerns placed on the record by any party. Mother requested that she be granted legal custody of the children. Gregory's counsel indicated that Gregory was not

present but requested that legal custody be granted to one of the parents.

{¶ 12} Ramona Miller, a CCDCFS social worker, testified first. Miller stated there was a case plan filed with the court that required substance abuse treatment for Gregory and Mother, mental health treatment for Mother, basic needs for parents to be able to demonstrate their ability to meet the basic needs of the children, and parenting education for Mother. Gregory is the father of G.S. and J.S., and Miller indicated that D.F.'s father was unknown. Miller further testified that Kevin M. was the alleged father of D.F., but paternity had not been established. By that time, two prior alleged fathers of D.F., namely Wayne W. and Sheridan L., had been genetically excluded.

{¶ 13} Gregory was referred for a substance abuse assessment and had engaged in services in July 2010. No treatment was recommended because Gregory had recently completed treatment and agreed to random urine screens. In September, he tested positive for opiates. He was then scheduled for an updated assessment but failed to appear. Miller's attempts to contact him since that time were unsuccessful. To her knowledge, he was not able to complete the terms of the case plan due to his last known residence in a transitional shelter. Gregory's last known visit with the children was September 24, 2010, and he had not seen the children

for at least two months at the time of the hearing.

{¶ 14} Kevin M. did not respond to Miller's attempts to engage him in services and have genetic testing.

{¶ 15} Miller testified that Mother was able to meet the basic needs component of the case plan at the time of the hearing. She completed a parenting class and domestic violence education. She had stable housing, completed parenting education, and completed a psychological evaluation. Mother engaged in services at Berea Children's Home and the Free Clinic, but was not taking her medications in April. Mother also did not appear for a follow-up in June. To Miller's knowledge, Mother did not maintain mental health services at the Free Clinic between November and April, but did obtain services from an in-home therapist during that time. Mother re-engaged in outpatient therapy with the Berea Children's Home in September 2010.

{¶ 16} Mother has a long history of substance abuse dating back to 2002. Mother completed the substance abuse component of the case plan by April 2010. In September 2009, Mother tested positive three times and remained clean until May 2010 when she tested positive for cocaine. Mother denied use, but hair testing resulted in a finding of chronic use.

{¶ 17} Miller expressed a concern that the children had been in agency

care three times. G.S. and J.S. had been in CCDCFS care since they were one and two years old. Over the course of eight years, the children would only remain in Mother's care for about a year until she would relapse, use, and fail to keep the children safe. The agency's involvement with the children resulted primarily from Mother's continued substance abuse. Mother has completed treatment on at least three occasions, but failed to remain sober.

{¶ 18} J.S. was diagnosed with ADHD, for which medication is required. J.S. has an Individualized Education Plan and is placed in a special class due to mental health concerns. Mom did attend visits with the children and had a bond with them.

{¶ 19} Mother tested positive for cocaine in May 2010. Miller believed Mother had maintained sobriety between June 8, 2010 through the hearing on December 1, 2010.

{¶ 20} Mother was diagnosed with depressive disorder and alcohol dependence. According to Miller, Mother was noncompliant with her medications for a few months around April 2010.

{¶ 21} Miller indicated that D.F and J.S. said they wanted to live with Mother, while G.S. expressed a desire to reside with his grandmother. Other professionals had advised Miller that G.S. was concerned with Mother

relapsing.

{¶ 22} Gregory's counsel also cross-examined Miller and established that Gregory had completed treatment at Fresh Start in March 2010. Gregory's last visit with his children was September 24, 2010. Gregory had ceased contact with Miller, and his last known address was a men's shelter. Although Gregory was scheduled to meet with CCDCFS in October, he failed to attend the meeting. He tested positive for opiates on at least two occasions in July and August 2010.

{¶ 23} Miller expressed concerns over Mother's history of relapsing over the course of an eight-year period, with the consequence of the children being placed in and out of CCDCFS care.

{¶ 24} This concluded the submission of evidence. The children's GAL advised the court that, since his report in June, Gregory had become somewhat involved but had not done so in the past. Historically, Mother was compliant with the case plans but "always relapses nearly every year, and it happened yet again." Although the children love their mother, their placement in foster homes has exacerbated their problems. G.S. has expressed concerns about Mother's ability to maintain sobriety. The children's preference, as expressed to the GAL, has always been to return to their grandmother. CCDCFS was re-examining the possibility of placement

with the grandmother in the event permanent custody was granted. The GAL indicated his belief that it was in the best interest of the children for permanent custody to be granted in light of Mother's continual relapses and the need to establish stability and permanence for the children.

{¶ 25} CCDCFS, as well as counsel for the children, petitioned the court to grant permanent custody to CCDCFS, while Mother's and Gregory's counsel maintained it should be denied in favor of Mother being the legal guardian. The children's counsel indicated that he wanted Mother's parental rights to be terminated so that they could be adopted and have stability. Counsel for the children argued that Mother had not completed the case plan or had exhibited factors indicative of another relapse, i.e., testing positive and failing to cooperate.

{¶ 26} The trial court indicated that Mother's approximate six months of sobriety was not enough to overcome her history of continual relapse, and there was too great of a risk to place the three young children with Mother. The trial court granted CCDCFS's complaint for permanent custody. The court issued a journal entry in which it found clear and convincing evidence that the children cannot be placed with the parents within a reasonable time or should not be placed with the parents for reasons contained in R.C. 2151.414(E). Specifically, the court cited: Mother's chemical dependency and

the inability to provide an adequate permanent home from the present time and within one year. With respect to J.S. and G.S., the court found that Gregory demonstrated a lack of commitment and failed to support, visit, or communicate with the children, and his other actions displayed an unwillingness to provide an adequate permanent home for the children. With respect to D.F., the alleged fathers had also demonstrated a lack of commitment, failed to support, visit, or communicate with the child and additionally found that they had abandoned the child.

{¶ 27} The court noted that Mother completed the plan but continued to relapse, failed random urine screens and hair sample tests, and reflected continued substance abuse. Gregory failed random urine screens and failed to attend follow-up substance abuse treatment, failed to provide for the basic physical needs of the children and had infrequent visits. The alleged fathers of D.F. had no contact with the child. Accordingly, the trial court determined that continued residence or return to the home would be contrary to the best interest of the children. The court granted permanent custody of each child to CCDCFS, and mother has appealed these orders.

{¶ 28} In her first assignment of error, Mother asserts that she was denied due process, alleging that Gregory was not served with notice of the adjudicatory hearing and amendments to the complaint.

{¶ 29} This assignment of error pertains to service of notice on Gregory, who is the father of J.S. and G.S. Gregory is not the father or an alleged father of D.F. Therefore, this assignment of error has no bearing on the trial court's order of permanent custody rendered with regard to D.F.

{¶ 30} This court has held that "one parent has standing on appeal to challenge the permanent custody order as void for failing to serve the other parent." *In re E.S.B.*, Cuyahoga App. No. 87673, 2006-Ohio-5002, ¶5, citing, *In re Call* (Apr. 12, 2001), Cuyahoga App. No. 78376. However, a party must establish prejudice before it can proceed to challenge an alleged error committed against a non-appealing party. Id., citing, *In re Hiatt* (1993), 86 Ohio App.3d 716, 721, 621 N.E.2d 1222. In this case, Mother has not established the requisite prejudice. Additionally, the parties waived this error by failing to assert it in the court below despite making court appearances and being represented by counsel.

{¶ 31} The record reflects that Gregory was served with notice of the proceedings by publication. Further, he appeared in court during the course of the custody proceedings as reflected by the June 22, 2010 transcript. At that time, he did not assert any objections and did not claim failure of service. Gregory was appointed counsel and advised to stay in touch with his attorney. His attorney appeared at the dispositional hearing and indicated

that Gregory had not appeared. Gregory's attorney did not object to the proceedings for a lack of notice, nor is there any indication that Gregory was unaware of the proceedings. His attorney participated in the proceedings, cross-examined witnesses, and requested that Mother be granted custody of the children. Mother did not assert any objection concerning the service of notice on Gregory at any point throughout the custody proceedings. The amendments to the complaint all pertained to allegations concerning Mother and did not relate to Gregory. Mother was fully advised of the amendments, which were placed in their entirety upon the record. Mother expressed her understanding and agreement to the amendments, indicated that she had received a copy of them, and entered admissions accordingly.

{¶ 32} The court considered evidence concerning Gregory's limited involvement with the children and participation in treatment. However, the record also contains evidence that he had not seen the children since September, he did not have stable housing, and he expressed no interest in gaining custody of his children. At the dispositional hearing, Gregory's attorney requested that Mother be given custody of the children. Accordingly, the record reflects that the parties waived this issue and, alternatively, Mother has failed to establish how the lack of service on the non-appealing father resulted in any prejudice to her. This assignment of

error is overruled.

{¶ 33} In her second assignment of error, Mother again relies on inaction by Gregory in attempting to obtain reversal of the permanent custody awards. Mother asserts that without Gregory's waiver of the statutory 90-day time limit set by R.C. 2151.35(B)(1), her voluntary waiver of the time limit was somehow invalid. Again, Gregory has not appealed the permanent custody order, nor did he raise any objection to the proceedings based on the 90-day time limit.

{¶ 34} Mother admits that the law recognizes as valid a party's waiver of the time limits set by the statute, and she further admits that she executed such a waiver in these cases. Mother presents no law that would support her argument that her waiver was invalid without a similar written waiver from all the fathers and alleged fathers. That proposition is not reasonable; especially given that some parents, such as D.F.'s father, never established paternity. Finally, Gregory was specifically advised of a hearing date scheduled beyond the 90-day time limit to which he did not object, thereby implicitly waiving the 90-day time limit. This assignment of error is overruled.

{¶ 35} The third assignment of error challenges the amendments to the complaint in the absence of a written motion being filed. Mother asserts that

the trial court committed plain error by accepting the amendments despite her stipulation and agreement to them on the record.

{¶ 36} Juv.R. 22(B) states:

{¶ 37} "Any pleading may be amended at any time prior to the adjudicatory hearing. After the commencement of the adjudicatory hearing, a pleading may be amended upon agreement of the parties or, if the interests of justice require, upon order of the court. * * * Where requested, a court order shall grant a party reasonable time in which to respond to an amendment. See, also, Juv.R. 19, which authorizes oral motions with permission of the court and states:

{¶ 38} "An application to the court for an order shall be by motion. A motion other than one made during trial or hearing shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority and may be supported by an affidavit."

{¶ 39} The amendments to the complaint were made by agreement of the parties at the April 13, 2010 hearing and were not required to be in writing. Nonetheless, the record contains Mother's acknowledgment that she had been given a copy of the amendments, which were set forth in detail on

the record.   Accordingly, Mother has failed to establish any plain error regarding the trial court's acceptance of the amendments that were proposed pursuant to her agreement.   This assignment of error is overruled.

{¶ 40} In her fourth assignment of error, Mother essentially asserts that she received ineffective assistance of counsel because her attorney did not object to the matters set forth in the previous assignments of error.

{¶ 41} In order to establish a claim of ineffective assistance of counsel, Mother must demonstrate that her trial counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. Prejudice is demonstrated when appellant proves that, but for counsel's actions, there is a reasonable probability that the result of the proceedings would have been different. *Strickland*, supra at 694.

{¶ 42} Because we found that Mother failed to allege or establish any prejudicial effect of the alleged lack of service on Gregory and because he himself waived the issue, Mother's counsel was not ineffective for failing to object on that ground.   Similarly, our resolution of Mother's previous assignments of error renders her claims of ineffective assistance of counsel

relating to them moot. To the extent Mother generally claims her counsel was ineffective for allowing her to sign a waiver of the time limit and for agreeing to the amendments, she offers no basis to support it, nor does she explain how the outcome of the proceedings would have been different in the event that she had not executed the waiver or had not made the admissions. Stated differently, there is no evidence to suggest that the court would have set a hearing outside the statutory time limit if she had not executed the waiver or that the evidence would have been any different or more favorable to her in the absence of the waiver or her admissions. In fact, waiving the time limit allowed her more time to complete her case plan.

{¶ 43} The fifth assignment of error asserts that the trial court erred by failing to record all of the proceedings.

{¶ 44} App.R. 10 imposes a duty on the appellant to ensure the transmission of a complete record to the appellate court for review. Loc.App.R. 10 also requires the appellant to "cause timely transmission of the record or seek an extension of time to do so from this court."

{¶ 45} R.C. 2151.35(A)(2) states:

{¶ 46} "A record of all testimony and other oral proceedings in juvenile court shall be made in all proceedings that are held pursuant to section 2151.414 of the Revised Code or in which an order of disposition may be made

pursuant to division (A)(4) of section 2151.353 of the Revised Code, and shall be made upon request in any other proceedings. The record shall be made as provided in section 2301.20 of the Revised Code."

**{¶ 47}** Juv.R. 37(A) states:

**{¶ 48}** "The juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings governed by these rules, a record shall be made upon request of a party or upon motion of the court. The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device."

**{¶ 49}** The Ohio Supreme Court has observed, "a juvenile court must take whatever steps are necessary to ensure that it records its proceedings. However, in the event that the proceedings are not recorded properly, the question that arises, * * * is whether an appellant has the obligation to attempt to correct an insufficient record by using one of the options available under App.R. 9 or whether the juvenile court's failure to record the proceedings in and of itself necessitates reversal." *In re B.E.*, 102 Ohio St.3d 388, 2004-Ohio-3361, 811 N.E.2d 76, ¶12. The court held "that when a juvenile court fails to comply with the recording requirements of Juv.R. 37(A)

and an appellant attempts but is unable to submit an App.R. 9(C) statement to correct or supplement the record, the matter must be remanded to the juvenile court for a rehearing." Id. at ¶16.

{¶ 50} CCDCFS argues that the recording requirement applies only to adjudicatory and dispositional hearings, which in this case are a part of the record. We note that there was critical testimony missing from the record in *In re B.E.*, and that the missing proceedings in this case relate to pretrial hearings. Even assuming, without deciding, that the recording requirement applies to all parental rights proceedings, there does not appear to be any effort to correct or supplement this record pursuant to App.R. 9; nor is there any indication that the missing pretrial proceedings contain anything that would have affected the outcome of these cases. Accordingly, this assignment of error is overruled.

{¶ 51} The final assignment of error asserts that the trial court's verdict was against the manifest weight of the evidence.

{¶ 52} In this assignment of error, Mother contends that the trial court erred when it granted permanent custody of her children to CCDCFS in the absence of clear and convincing evidence. CCDCFS maintains the court did not abuse its discretion when it determined the best interest of the children would be served by granting CCDCFS permanent custody. The issue

presented here concerns the permanent custody of the children.

{¶ 53} In considering an award of permanent custody, the court must first determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody. R.C. 2151.414(D). In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted; the interaction of the child with parents, siblings, and foster parents; the wishes of the child; the custodial history of the child; and the child's need for a legally secure permanent placement.

{¶ 54} In addition to determining the child's best interest, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C. 2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply.

{¶ 55} Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.

{¶ 56} R.C. 2151.414(E) includes the following factors:

{¶ 57} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;

{¶ 58} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code;

{¶ 59} "* * *

**{¶ 60}** "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

**{¶ 61}** "* * *

**{¶ 62}** "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."

**{¶ 63}** The trial court found that the children could not be placed with mother within a reasonable time due to her severe chemical dependency and her inability to provide an adequate permanent home for the children at the present time and within one year from the time the court holds the hearing. The court further found that fathers and alleged fathers of G.S., J.S., and D.F. demonstrated a lack of commitment to the children, failed to regularly support, visit, or communicate with them, and displayed an unwillingness to provide adequate homes for the children. With respect to the alleged fathers of D.F., the court found they had abandoned the child. The existence of any one of the factors can be sufficient grounds for the trial court to determine that the children could not be placed with either parent within a reasonable

time. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶50.

**{¶ 64}** Further, the court properly determined that placement with any of the parents was not in the best interest of the children.

**{¶ 65}** The trial court's judgment was not against the manifest weight of the evidence.

Judgments affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

JAMES J. SWEENEY, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
COLLEEN CONWAY COONEY, J., CONCUR