[Cite as *In re J.C.*, 2011-Ohio-3842.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96269**

---

## IN RE: J.C.
## A Minor Child

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 09921970

**BEFORE:** Jones, J., Sweeney, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** August 4, 2011

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113-1901


**ATTORNEY FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Gina S. Lowe
Assistant Prosecuting Attorney
4261 Fulton Parkway
Cleveland, Ohio 44113


LARRY A. JONES, J.:

{¶ 1} Defendant-appellant, Melanie Carson ("Carson"), appeals the trial court's granting of permanent custody of her son, "J.C.," to appellee. For the reasons that follow, we affirm.

<u>Procedural History and Facts</u>

{¶ 2} Carson gave birth to J.C. in 2008. In November 2009, when J.C. was 17 months old, he was removed from his mother's care after being found by police with a

caregiver that was under the influence of drugs and alcohol and Carson could not be located. J.C. was the fifth child to be removed from Carson's care; CCDCFS already had permanent custody of four of her children.[1]

{¶ 3} CCDCFS filed a complaint seeking permanent custody. The matter proceeded to a trial, at which Carson was represented by an attorney and a guardian ad litem ("GAL").

{¶ 4} At trial, the court heard evidence that Carson did not have suitable housing; she lived with her boyfriend in a one-bedroom apartment that did not contain a bed. Carson had never been employed, had a long history of substance abuse, and was demonstrating "drug seeking" behaviors by requesting pain medication from several local hospitals. The mother also refused to update her drug and alcohol assessment. The agency did note that the mother's last few drug screens had come back negative. But Carson was non-compliant with her caseplan and had not maintained contact with her social worker, had not recently visited with J.C., and told her social worker she no longer wanted to visit with the child.

{¶ 5} The state presented evidence that J.C. had special needs and was receiving intensive speech and occupational therapy. The GAL for J.C. recommended that permanent custody was in the child's best interest due to mother having not visited with her son in over 90 days, non-compliance with the caseplan, J.C. had special needs and might need surgery on his eye, mother had ongoing mental health problems, drug and alcohol abuse, unstable

---

[1] A sixth child was born in 2010 and resided in the same foster home as J.C. At the time

housing, a lengthy criminal record, and a past history with the agency. Furthermore, J.C. was placed with a foster mother that he had bonded with and that wished to adopt him.

**{¶ 6}** The mother's GAL recommended that the agency's motion for permanent custody be denied and temporary custody be extended to give the mother more time to work on her caseplan. The mother's GAL based her opinion on the short length of time the current social worker had been assigned to the case, the conclusion that mother's housing "seemed appropriate," that there was no current referral for mental health services, that the mother's last three urine screens were negative, and that Carson's transportation problems prevented her from seeing her son or completing her caseplan.

**{¶ 7}** After hearing all the evidence, the trial court granted permanent custody of J.C. to CCDCFS, finding the mother had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home, she demonstrated a lack of commitment towards J.C., she had had her parental rights terminated with respect to her other children, and was unable to show that, notwithstanding the prior terminations, she could provide a legally secure permanent home for J.C. The trial court further found that a grant of permanent custody to CCDCFS was in J.C.'s best interest.

**{¶ 8}** Carson appealed, raising the following assignments of error, which will be combined for review:

of trial, mother was pregnant with her seventh child.

**{¶ 9}** "I.    The trial court erred by granting permanent custody to CCDCFS when the decision was not supported by the evidence.

**{¶ 10}** "II.    The trial court erred in finding that permanent custody was in the best interest of the child."

<u>Permanent Custody Factors</u>

**{¶ 11}** R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency.    The statute requires the court to find, by clear and convincing evidence, (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d), and (2) an award of permanent custody is in the best interest of the child.

**{¶ 12}** Clear and convincing evidence is that which will produce in the trier of fact "'a firm belief or conviction as to the facts sought to be established.'"    *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.    While requiring a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a reasonable doubt.    *In re Parsons* (Nov. 12, 1997), Lorain App. Nos. 97CA006662 and 97CA006663.

**{¶ 13}** Pursuant to R.C. 2151.414(B)(1)(a)-(d), the trial court must find that any of the following apply:    the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or

where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. Id.

{¶ 14} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:

"(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

"(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

"(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

"(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

"(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶ 15} Where clear and convincing proof is required at trial, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. *In re T.S.*, Cuyahoga App. No. 92816, 2009-Ohio-5496, ¶24, citing *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Judgments

supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.    Id.

{¶ 16} Thus, we look to the entire record to determine whether the trial court had sufficient evidence to clearly and convincingly find that it was in J.C.'s best interest to place him in the permanent custody of CCDCFS and that he could not or should not be placed with his mother within a reasonable period of time.    After a thorough review of the evidence, we conclude that the trial court's judgment was based on sufficient evidence and was not against the manifest weight of the evidence.

<u>Placement</u>

{¶ 17} As it relates to this appeal, in making a finding under R.C. 2151.414(B)(1)(a) that the child cannot be placed with his parents within a reasonable time or should not be placed with his parents, the court must find, by clear and convincing evidence, that at least one of the eight factors set forth in R.C. 2151.414(E) applies.    *In re G.S.*, Cuyahoga App. Nos. 96158, 96159, and 96160, 2011-Ohio-2158.

{¶ 18} In this case, the trial court found that J.C. could not, and should not, be placed with either parent.    The trial court found that the following factors in R.C. 2151.414(E), applied:

> "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions

causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;

" * * *

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

" * * *

"(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶ 19} The trial court found that Carson had had her parental rights terminated with respect to four of her other children; that notwithstanding reasonable efforts by CCDCFS to assist her, she had continuously and repeatedly failed to remedy the conditions that caused J.C.'s removal; that Carson displayed a lack of commitment to her child by failing to regularly support, visit, or communicate with him; she was unable to provide an adequate permanent

home for the child; paternity had not been established for the child; and that the child had significant special needs that required intense treatment and the mother was unable to meet the child's special needs.

{¶ 20} Again, the existence of any one of the factors in R.C. 2151.414(E) can be sufficient grounds for the trial court to determine that the child could not be placed with either parent within a reasonable time. *In re G.S.*, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶50.

{¶ 21} Carson argues that the finding of permanent custody was not supported by the evidence because she had multiple clean urine screens, had received a mental health evaluation, was unable to visit her son due to financial issues, and had proper housing. The evidence presented at trial, however, rebuts these assertions. Although Carson had three clean urine screens, she had missed several screens and was demonstrating drug seeking behaviors by visiting several area hospitals trying to get pain medication. She also failed to show up at the agency to complete an updated substance abuse assessment. As to Carson's claim that she could not attend visitations with her son or complete the required substance abuse and mental health screenings, her social worker testified that the agency would have given her bus fare if she had requested assistance. Carson had indicated to the social worker she no longer wanted to visit with her son and her housing was neither stable nor adequate, in that she was living with a new boyfriend in a one-bedroom apartment without a bed. Carson

also had no income, other than food stamps. Finally, paternity had not been established for the child.

{¶ 22} Therefore, the trial court's determination that the child could not and should not be placed with either parent within a reasonable time was supported by clear and convincing evidence.

Best Interest Determination

{¶ 23} The trial court further found that permanent custody was in J.C.'s best interest. Pursuant to R.C. 2151.414(D)(1)(a) and (c), the record reflects that the mother had not consistently visited with her son, had not seen the child for several months, and had told the social worker that she no longer wished to see her son.

{¶ 24} As to R.C. 2151.414(D)(1)(b), J.C. was only two years old and therefore unable to express his own wishes. J.C.'s GAL recommended that permanent custody be granted to the agency because the child needed stability, had demonstrated a bond with his foster mother, was living in the same foster home as one of his siblings, was happy in his current home, and his foster mother had expressed interest in adopting him.

{¶ 25} As to R.C. 2151.414(D)(1)(d), there is significant evidence in the record that J.C. needed legally secure placement and that such placement could not be made without a grant of permanent custody to the agency.

{¶ 26} Finally, as to R.C. 2151.414(D)(5), it is undisputed that the mother had had the parental rights involuntarily terminated with respect to four siblings of the child. See R.C. 2151.414(E)(11).

{¶ 27} The mother argues that permanent custody should not be granted to the agency because her GAL testified that temporary custody should be extended instead of granting permanent custody to CCDCFS. But, in Ohio, the best interest determination focuses on the child, not the parent. *In re D.A.*, Cuyahoga App. No. 95188, 2010-Ohio-5618. In fact, R.C. 2151.414(C) expressly prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents. Thus, we must consider what is in the best interest of the child, not what the mother's GAL thinks is in the mother's best interest.

{¶ 28} Therefore, we find the trial court's decision that permanent custody was in the best interest of the child was supported by clear and convincing evidence.

{¶ 29} The first and second assignments of error are overruled.

Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


LARRY A. JONES, JUDGE

JAMES J. SWEENEY, P.J., and
KENNETH A. ROCCO, J., CONCUR