**[Cite as *In re S.H.*, 2011-Ohio-4721.]**

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

IN RE:                                              :

                                                   :           Appellate Case Nos. 24619
            S.H.                                    :                         24644

                                                   :

                                                   :           Trial Court Case No. JC 2004-1662

                                                   :

                                                   :           (Juvenile Appeal from
                                                   :            Common Pleas Court)

                                                   :

                                                   :

                                        . . . . . . . . . .

### O P I N I O N

Rendered on the 16th day of September, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorneys for Appellee, State of Ohio

CASSIE L. SCRENGI, Atty. Reg. #0084895, 130 West Second Street, Suite 840, Dayton,
Ohio 45402
        Attorney for Appellant, D.H.
and
MARK SEGRETI, Atty. Reg. #0009106, 1405 Streamside Drive, Centerville, Ohio 45459
        Attorney for Appellant, C.R.

. . . . . . . . .

HALL, J.

{¶ 1} C.R. and D.H. appeal separately from the trial court's judgment entry

overruling their objections to a magistrate's decision and awarding Montgomery County

Children Services ("MCCS") permanent custody of their child, S.H.

{¶ 2} The record reflects that the trial court adjudicated S.H. dependent and neglected in response to a complaint filed by MCCS. After obtaining temporary custody, MCCS moved for permanent custody in October 2009. A magistrate held a hearing on the motion. Based on the evidence presented, the magistrate awarded MCCS permanent custody of S.H., who was nine years old at the time. In support of the custody determination, the magistrate found, inter alia, that S.H. had been in MCCS's custody for twelve or more months of a twenty-two-month period and that awarding the agency permanent custody was in the child's best interest.  C.R. ("Mother") and D.H. ("Father") filed objections and supplemental objections to the magistrate's ruling. On April 12, 2011, the trial court overruled the objections and granted MCCS permanent custody. Expedited appeals by Mother and Father followed.

{¶ 3} Mother's appeal contains three assignments of error. First, she claims the trial court erred in adopting the magistrate's decision. Second, she asserts that the trial court's grant of permanent custody to MCCS is contrary to law and unsupported by substantial, competent, and reliable evidence. Third, she argues that the trial court's permanent custody determination is against the weight of the evidence.

{¶ 4} Father advances five assignments of error in his appeal. First, he contends MCCS failed to prove, by clear and convincing evidence, that it provided reasonable case planning and made diligent efforts to reunify S.H. with him. Second, he claims an award of permanent custody to MCCS is not in S.H.'s best interest. Third, he asserts that the trial court erred in denying his request to continue the hearing on MCCS's permanent custody motion.

Fourth, he argues that the trial court erred in "giving weight" to a guardian ad litem's report. Fifth, he contends the trial court demonstrated bias and prejudice against him by terminating his visitation rights while objections to the magistrate's decision were pending.

{¶ 5} In *In re M.R.*, Montgomery App. No. 2010 CA 64, 2011-Ohio-3733, ¶24-26, this court summarized the legal standards governing a children services agency's motion for permanent custody:

{¶ 6} "R.C. 2151.413 dictates when a children services agency may seek permanent custody of a child. With some exceptions, R.C. 2151.413(D) generally requires a children services agency to pursue permanent custody of a child that has been in the agency's temporary custody for twelve or more months of a consecutive twenty-two month period. * * * If the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period at the time the motion for permanent custody is filed, the court need only determine whether permanent custody is in the child's best interest. R.C. 2151.414(B)(1)(d). The court need not consider whether the child can be placed with either parent within a reasonable time or should not be placed with the child's parents, as would be required under R.C. 2151.414(B)(1)(a). *In re C. W.*, 104 Ohio St.3d 163, 166-167, 2004-Ohio-6411, at ¶21. All of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); *In re J.R.*, Montgomery App. No. 21749, 2007-Ohio-186, ¶9.

{¶ 7} "R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other

person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable."

{¶ 8} In three related assignments of error, which she has briefed together, Mother first contends the trial court's custody determination is contrary to law and unsupported by the evidence. More specifically, she claims the trial court's judgment is based on a finding that S.H. "could not be placed with either parent within a reasonable time or should not be placed with the child's parents." Mother correctly points out that such a finding was unnecessary because S.H. had been in MCCS's custody for more than twelve of twenty-two consecutive months. See *In re C.W.*, at ¶21.

{¶ 9} We do not agree, however, that the trial court's inclusion of an unnecessary finding in its ruling rendered its judgment contrary to law or unsupported by the evidence. A trial court may grant an agency permanent custody if such a disposition is in a child's best interest and either (1) the child cannot or should not be placed with a parent or (2) the child has been in the agency's custody for at least twelve of twenty-two months. R.C. 2151.414(B)(1). In the present case, the trial court unnecessarily made *both* findings. Given that S.H. admittedly had been in MCCS's custody for the requisite twelve-month period, the only disputed issue was whether awarding the agency permanent custody was in the child's

best interest. The trial court fully addressed the best-interest issue, however, and its inclusion of an extraneous finding in its ruling does not constitute grounds for reversal.

{¶ 10} With regard to determining the best interest of S.H., Mother contends the trial court misapplied the applicable factors and the burden of proof. Her argument implicates R.C. 2151.414(D), which directs a trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 11} Having reviewed the trial court's ruling (which adopted the magistrate's decision), we conclude that it reflects proper consideration and application of the forgoing factors. With regard to R.C. 2151.414(D)(1), the magistrate found, by clear and convincing evidence, that S.H. had minimal contact with Father, limited contact with Mother, and no meaningful contact with siblings. The magistrate further found that S.H. was doing "very well" in foster care and had no meaningful bonding with Father and only modest bonding with Mother. With regard to R.C. 2151.414(D)(2), the magistrate found, by clear and convincing evidence, that S.H. most recently had expressed a desire to remain with her foster family. With regard to R.C. 2151.414(D)(3), the magistrate found, by clear and convincing evidence,

that S.H. had been in foster care for sixteen months when MCCS moved for permanent custody. With regard to R.C. 2151.414(D)(4), the magistrate found S.H. in need of a legally secure placement, expressed doubt about whether Father or Mother could serve as custodian, and noted the absence of anyone else willing and able to fulfill that role. Finally, with regard to R.C. 2151.414(D)(5), the magistrate found that none of the factors in R.C. 2151.414(E)(7) through (11) was applicable.[1]

{¶ 12} On appeal, Mother contends R.C. 2151.414(D)(1) weighs in her favor because S.H. was bonded to her. We disagree. The record reasonably supports a finding that S.H. had a closer bond with her foster family, with whom she had been living for well over a year and by whom adoption was desired. Despite Mother's argument to the contrary, under R.C. 2151.414(D)(2) the magistrate and trial court also were entitled to consider nine-year-old S.H.'s preference for living with her foster family. Given the length of time S.H. had spent in MCCS's custody, the record also reasonably supports a finding that R.C. 2151.414(D)(3) militates in favor of awarding the agency permanent custody.

{¶ 13} Mother's argument on appeal focuses primarily on R.C. 2151.414(D)(4), which obligated the trial court to consider S.H.'s "need for a legally secure permanent placement and whether that type of placement [could] be achieved without a grant of permanent custody to the agency." Mother contends the trial court failed to consider this "crucial issue." She interprets R.C. 2151.414(D)(4) as requiring MCCS to prove that S.H. needed a legally secure,

---

[1] The R.C. 2151.414(E)(7) through (11) factors, which have no applicability here, address things such as whether the parent has been convicted of certain offenses, has withheld medical treatment or food, has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment or refused to participate in further treatment two or more times, has abandoned the child, or has had parental rights to a sibling of the child involuntarily terminated.

permanent placement and that such a placement could be achieved only by granting the agency permanent custody. (See Mother's Brief at 14-17). Mother argues: "The issue upon which the agency was required to present proof sufficient to be clear and convincing evidence [was] whether the *only way* that S.H. can have a legally stable placement is by the agency having permanent custody. On this issue, there is not sufficient substantial evidence to support the drastic legal conclusion of terminating Mother's parental rights." (Id. at 16).

{¶ 14} Mother's argument reflects her misunderstanding of R.C. 2151.414(D)(4). The Ohio Supreme Court discussed proper application of that provision in *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶62-64, as follows:

{¶ 15} "As for the R.C. 2151.414(D)(4) factor of the child's need for permanent placement and the ability to achieve placement without a grant of permanent custody to the agency, the court found that Damian had a strong need for permanent placement, and that such a placement could be made with David Morris and his wife or with the foster family.

{¶ 16} "In considering all the factors and 'the totality of the circumstances,' the court found that it was in the best interest of the child that 'the permanent custody motion be granted so that the placement of the child in his current foster home be continued.'

{¶ 17} "The court satisfied its statutory duty. That duty did not include the requirement imposed by the appellate court that the juvenile court determine by clear and convincing evidence that 'termination of appellant's parental rights was not only a necessary option, but also the only option.' Nor did that duty include the requirement that the juvenile court find by clear and convincing evidence that no suitable relative was available for placement. The statute requires a weighing of all the relevant factors, and the trial court did

that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors."

**{¶ 18}** In light of *Schaefer*, we reject Mother's argument that the trial court was required to find no other option available before awarding permanent custody to MCCS. "The issue of a child's best interest comes at the end of a long road. " Id. at ¶65. Perhaps unlike earlier stages of a dependency, abuse, or neglect proceeding, a best-interest analysis in the context of an agency's permanent custody motion requires considering more than whether a child *could* be reunited with a parent. Id. The possibility of placing S.H. somewhere other than in MCCS's permanent custody was but one of the factors for the trial court to consider under R.C. 2151.414(D). Therefore, even if true, Mother's assertion that awarding MCCS permanent custody was not the *only way* to provide stability for S.H. is far from dispositive.

**{¶ 19}** Having reviewed the record, we believe MCCS proved, by clear and convincing evidence, that awarding it permanent custody was in S.H.'s best interest. Such a determination is not contrary to law, unsupported by the evidence, or against the weight of the evidence. As a result, the trial court did not err in overruling Mother's objections and adopting the magistrate's decision. Mother's assignments of error are overruled.

**{¶ 20}** We turn now to Father's appeal. In his first assignment of error, Father contends MCCS failed to prove, by clear and convincing evidence, that it provided reasonable case planning and made diligent efforts to reunify S.H. with him. Absent such proof, Father

claims the trial court erred in granting MCCS permanent custody.

{¶ 21} Upon review, we find Father's argument to be without merit. As noted above, the parties do not dispute that S.H. had been in the temporary custody of MCCS for more than twelve months of a consecutive twenty-two-month period when the agency moved for permanent custody. In light of that fact, which the trial court recognized, MCCS was not required to demonstrate reasonable case planning and diligent efforts at reunification. As this court noted in *In re J.R.*, when the "twelve in twenty-two" requirement has been satisfied, the only remaining issue is whether a grant of permanent custody to MCCS is in a child's best interest. Father's arguments about reasonable case planning and diligent efforts at reunification go to a different issue, namely whether a child can be placed with either parent within a reasonable time or should not be placed with the child's parents. See, e.g., *In re J.C.*, Cuyahoga App. No. 96269, 2011-Ohio-3842, ¶18-20. That issue arises when a child *has not* been in an agency's custody for more than twelve months of a consecutive twenty-two-month period. Because S.H. had been in MCCS's custody for more than twelve of the preceding twenty-two months, the agency no longer was required to show reasonable case planning and diligent efforts at reunification. Cf. *In re A.M.*, Greene App. No. 2009 CA 41, 2009-Ohio-6002, ¶45-47; *In re Smith*, Miami App. No. 2001-CA-54, 2002-Ohio-1786. Father's first assignment of error is overruled.

{¶ 22} In his second assignment of error, Father claims an award of permanent custody to MCCS was not in S.H.'s best interest. In support, he disputes a finding that placement with him would be a threat to S.H.'s safety. Father cites his own hearing testimony that he does not pose a safety threat. He also expresses his opinion that S.H. has bonded with

him. Finally, Father contends he adequately explained why he did not contact S.H. for periods of time.

{¶ 23} The foregoing arguments fail to persuade us that the trial court's best-interest determination is erroneous. We are unsure precisely what the magistrate and the trial court meant when they characterized Father as a posing a threat to S.H.'s safety. The record does reflect, however, that Father has a history of incarcerations, substance abuse, housing and employment instability, and sporadic contact with S.H. During the hearing below, he admitted not contacting S.H. for many months because he knew he was wanted on a felony warrant. For the reasons set forth more fully above, we again conclude that MCCS proved, by clear and convincing evidence, that awarding it permanent custody was in the child's best interest. Father's second assignment of error is overruled.

{¶ 24} In his third assignment of error, Father asserts that the trial court erred in denying his request for a continuance. His argument, however, actually concerns the magistrate's denial of his request to continue the hearing on MCCS's permanent custody motion. In support of the request, Father's attorney argued below that he had been able to meet with his client only two weeks before the hearing. The magistrate determined that two weeks was sufficient time to prepare. Without a showing of some prejudice by Father's counsel, the magistrate overruled the motion. (Trial transcript at 7-8).

{¶ 25} We will not reverse the denial of a continuance absent an abuse of discretion. *Crawford v. Hawes*, Montgomery App. No. 23209, 2010-Ohio-952, ¶10. Given counsel's failure below to identify any particular prejudice that Father suffered by being denied a continuance, we see no abuse of discretion in the magistrate's ruling. The third assignment of

error is overruled.

{¶ 26} In his fourth assignment of error, Father argues that the trial court erred in "giving weight" to a guardian ad litem's report. Father contends the report was entitled to no weight in the trial court's custody determination because the guardian ad litem had not spoken to Mother for several months and had not contacted him despite discovering his location two weeks before the hearing.

{¶ 27} Upon review, we find Father's argument to be unpersuasive. The guardian ad litem testified at the hearing and was subject to cross examination. She explained the basis for her opinions regarding the best interest of S.H. She also responded to questions about her investigation of the case and her interaction with Father and Mother. In addition, Father and Mother testified and were able to explain first-hand what had happened in their lives since their last contact with the guardian ad litem. After reviewing all of the evidence, the trial court was free to assess "the guardian ad litem's credibility and determine the weight to be given to [the] report." *In re Sydney J*. (Sept. 30, 1999), Ottawa App. No. OT-99-026. We find no merit in Father's argument that the trial court was required to disregard the report based on an alleged deficiency in the guardian ad litem's investigation. The fourth assignment of error is overruled.

{¶ 28} In his fifth assignment of error, Father contends the trial court demonstrated bias and prejudice against him by terminating his visitation rights while objections to the magistrate's decision were pending. This argument stems from an agreement between the parties that Father would have visitation with S.H. while his objections were pending if he passed a drug test. Father filed a motion below, arguing that he had been arrested on an

outstanding warrant before he could take the drug test. He argued that counsel for MCCS and the guardian ad litem were aware of the warrant when they made the agreement and knew he would be arrested before taking the test. Therefore, Father asked the trial court to set aside the agreement. (Doc. #23). The trial court responded by recognizing Father's predicament and ordering him "to submit to drug testing either while he is in custody or upon his release." (Doc. #21).

{¶ 29} We see no evidence of bias or prejudice by the trial court against Father. In the proceedings below, Father alleged that counsel for MCCS and the guardian ad litem had made the visitation deal despite knowing that he could not perform his obligation. Father did not allege impropriety by the trial court itself, which attempted to remedy the problem upon discovering it. We note, too, that the trial court's judgment entry overruling Father's objections has rendered moot any issue regarding his visitation rights. The fifth assignment of error is overruled.

{¶ 30} Based on the reasoning set forth above, the judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Johnna M. Shia
Cassie L. Screngi
Mark Segreti
Hon. Anthony Capizzi