[Cite as *In re M.W.*, 2014-Ohio-3061.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

IN RE:                                          :
                                                :        Appellate Case No. 26107
            M.W. and N.W.                       :
                                                :        Trial Court Case Nos.   2009-11289
                                                :                                2009-11291
                                                :
                                                :        (Civil Appeal from Common Pleas
                                                :         Court, Juvenile)
                                                :
                                                :

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of July, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Appellee, Montgomery County Children Services Board

CHARLES W. SLICER, III, Atty. Reg. #0059927, 111 West First Street, Suite 518, Dayton, Ohio 45402
        Attorney for Appellant, J.W.

MARCY VONDERWELL, Atty. Reg. #0078311, 260 North Detroit Street, Xenia, Ohio 45385
        Attorney for Guardian Ad Litem

JAMES ARMSTRONG, Atty. Reg. #0020638, 131 North Ludlow Street, Suite 386, Dayton, Ohio 45402
        Attorney for Minor Child, M.W.

CONNIE KLAYKO, Atty. Reg. #0083785, 61-B South Main Street, Dayton, Ohio 45458

Attorney for Minor Child, N.W.
BEN SWIFT, Atty. Reg. #0065745, 333 West First Street, Suite 445, Dayton, Ohio 45402
Attorney for Appellee, K.B.

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}    J.W. (Father) appeals from the trial court's judgment entries awarding appellee Montgomery County Children Services (MCCS) permanent custody of his two children, M.W. and N.W.

{¶ 2}    In his sole assignment of error, Father contends the trial court erred in awarding MCCS permanent custody because the agency failed to prove by clear and convincing evidence that such a disposition was in the children's best interest.

{¶ 3}    The record reflects that K.B. (Mother) gave birth to M.W. in 2003 and N.W. in 2004. MCCS filed dependency complaints regarding the two children in December 2009. The complaints alleged that the children were dependent due to instability of the parents, parenting concerns, and the condition of the marital residence. More specifically, the complaints alleged that Father had been in and out of jail on multiple charges, including domestic violence, that he was incarcerated, that utilities to the marital residence had been shut off, and that the residence was in a "deplorable" condition. The children later were adjudicated dependent, and MCCS obtained temporary custody. Thereafter, temporary custody twice was extended while Father and Mother, who were separated, attempted to satisfy their respective case-plan requirements. While in MCCS's temporary custody, the children resided together in two foster homes. In November 2011, MCCS moved for permanent custody. Father responded by filing his own motion for legal custody. The matter proceeded to a three-day dispositional hearing before a magistrate in 2012. Based on the evidence presented, the magistrate sustained MCCS's motion for permanent

custody and overruled Father's motion. Father timely objected to that decision. On February 20, 2014, the trial court filed a decision and judgment entry in which it independently reviewed the record, made its own findings of fact and conclusions of law, overruled the objections, and adopted the magistrate's decision. This timely appeal by Father followed.[1]

{¶ 4}  When a child has been in temporary custody of a children services agency for twelve or more months of a consecutive twenty-two-month period, a trial court is authorized to terminate parental rights and to grant permanent custody to the agency if it finds, by clear and convincing evidence, that permanent custody is in a child's best interest. *In re R. Y.,* 2d Dist. Montgomery No. 25694, 2013-Ohio-3942, ¶ 10. Here Father concedes that MCCS satisfied the twelve-month requirement. He challenges only the trial court's best-interest finding, which we review for an abuse of discretion. *Id.* at ¶ 11.

{¶ 5}  The statutory best-interest factors include: (1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable. *Id.* at ¶ 12.

{¶ 6}  On appeal, Father contends the best-interest factors support awarding him legal custody of M.W. and N.W. He argues that he substantially completed his case-plan objectives, that he regularly visited with his children, that they were bonded with him,  that he maintained

---

[1] Mother has not challenged the trial court's permanent-custody ruling. During the dispositional hearing, she testified that she believed it was in the best interest of M.W. and N.W. for the current foster parents to adopt them following a grant of permanent custody to MCCS. (Hearing Tr. Vol. III at 463-464).

employment, and that reunification was possible.

{¶ 7}   Notwithstanding Father's arguments, we see no abuse of discretion in the trial court's finding that an award of permanent custody to MCCS is in the children's best interest. The trial court noted that Father's case-plan objectives included obtaining and maintaining stable income, obtaining and maintaining acceptable housing, submitting to a parenting and psychological evaluation, obtaining treatment for domestic-violence issues, submitting to a drug and alcohol assessment and following through with all recommendations, maintaining consistent visitation with the children, and refraining from additional criminal activity.

{¶ 8}   After examining the evidence, the trial court found that Father had "failed to substantially complete his case plan objectives." (Doc. #3 at 6). In support, the trial court stated:

> * * * [Father] completed a parenting and psychological evaluation, maintained consistent visitation with his children, and refrained from further criminal involvement. However, [Father] failed to follow through with [a] recommendation to engage in long-term psychotherapy and failed to complete domestic violence treatment. Furthermore, while [Father] does currently have housing and income, [Father] has failed to demonstrate that he can maintain said housing and income, and the Court has doubts as to whether said housing is appropriate for children.

(Doc. #3 at 6).[2]

---

[2] The trial court found that Father had met his case-plan objective of refraining from criminal activity because he had not committed any crimes during the six months preceding the dispositional hearing. Prior to that six-month window, however, and while the dependency action was pending, Father received citations for driving without a license and driving without license plates. Prior to the six-month window, he also was convicted of felony domestic violence and served prison time. (Doc. #3 at 6). Parenthetically, we note too that Father pled guilty to a new charge of felony theft and received community control sanctions just four months before the trial court overruled

**{¶ 9}** The record supports the trial court's findings concerning the case-plan objectives. With regard to stable income, the trial court cited evidence of Father's long history of irregular and unstable employment, his holding jobs for only short time periods while the dependency action was pending, and his performance of odd jobs and receipt of unemployment benefits of $160 per week at the time of the dispositional hearing. (Doc. #3 at 4).

**{¶ 10}** With regard to suitable housing, the trial court cited evidence of Father's extreme transience and unstable housing. It also noted his long history of failing to maintain working utilities or to pay utility bills. The trial court observed that on the final day of the dispositional hearing Father's most recent residence (his third home during the dependency action along with stints in jail, prison, and a period of homelessness) still lacked functioning utilities, functioning indoor plumbing, and basic appliances. (*Id*. at 4). Although Father testified that those deficiencies were in the process of being remedied, the trial court had ample justification to doubt whether Father's housing was appropriate or whether he could maintain it.

**{¶ 11}** With regard to long-term psychotherapy and domestic-violence treatment, the trial court cited evidence to support its finding that these objectives remained unmet. In particular, it noted Father's failure to follow through with individual therapy and his termination from a domestic-violence program for excessive absences even after being given a second chance. (*Id*. at 5).

**{¶ 12}** As to the specific statutory best-interest factors, the trial court addressed each one and made corresponding findings, which are supported by the record. With regard to the children's interaction with others, the trial court found:

---

his objections to the magistrate's decision in this case. *See*, Montgomery C.P. No. 2013 CR 1346 (Oct. 10, 2013).

The children have not lived with [Mother] and [Father] since December 2009. Since their removal, the children have had consistent visitation time with [Mother]. The children's relationship with [Mother] has suffered in some respects because of the extended separation, but the children love [Mother] and she loves them. The children have had extremely consistent visitation time with [Father] since their removal. The children's therapist, Jennifer Cantrell-Goldy, reports [N.W.] indicates [Father] has touched her in an unhealthy way. However, Dr. King, who had the opportunity to observe visitation in 2010 and 2012, reported no inappropriate behavior between [Father] and the children. The current foster parents report the children's behavior is out of control after visiting with [Father]. The children have been at their current foster placement since November 2011. The children appear bonded to their foster parents. The CASA GAL reports the foster parents say the children are a joy to have. The foster parents have expressed an interest in adopting the children if they have the opportunity. The record does not indicate the children have had any visitation time with any other relatives since being placed in the temporary custody of MCCS. The Court notes MCCS considered a number of relatives recommended by [Mother] and [Father] as potential placements for the children. The children's maternal great aunt was unable to care for the children. [Father's] brother and his wife expressed an interest in caring for the children, but then they stopped communicating with MCCS. Thus, MCCS concluded that none of the suggested relatives were viable placements for the children.

(Citations to the record omitted) (*Id*. at 7-8).

{¶ 13}   With regard to the wishes of the children, the trial court found: "The CASA GAL reports the children wish to stay with their foster parents." (Citations to the record omitted) (*Id*. at 8).

{¶ 14}   With regard to the custodial history of the children, the trial court found: "The children have been in the temporary custody of MCCS since December 2009. While in MCCS's custody, the children have been in two different foster homes. The children still have an excellent relationship with their first foster mother, who they call 'Grandma.' The children have been in their current foster placement since November 2011." (Citations to the record omitted) (*Id*.).

{¶ 15}   With regard to the children's need for a legally secure placement and whether such a placement could be achieved without a grant of permanent custody to MCCS, the trial court found:

> The Court notes temporary custody of the children was granted to MCCS on April 8, 2010, and that both extensions of temporary custody have been granted. On November 4, 2011, MCCS filed a motion for permanent custody of the children. Furthermore, [M.W.] and [N.W.] have medical and/or behavioral disorders which require ongoing treatment and therapy. As both extensions of temporary custody have been granted and given the children's medical/behavioral conditions, the Court finds the children are in need of a legally secure and permanent placement. As previously discussed, [Mother] and [Father] have not completed or made substantial progress on their case plans. As such, the Court finds a legally secure placement cannot be achieved without granting permanent custody to MCCS.

(Citations to the record omitted) (*Id*.).

{¶ 16} Finally, the trial court found that none of the remaining best-interest factors in R.C. 2151.414(E)(7) through (E)(11) applied.[3] (*Id*. at 9).

{¶ 17} Based on its review of the evidence, the trial court summarized its findings as follows:

> The children in this case have been in foster care for over thirty months. MCCS made reasonable efforts to implement and finalize the permanency plan, to eliminate the continued removal of the children from the children's home, and make it possible for the children to return home. The children are doing well in their foster homes and appear to be bonded to their foster family. Placement with [Mother] or [Father] is not possible within a reasonable time. No other family member is willing or able to care for the children at this time. The children are adoptable. The current foster parents plan to adopt the children if the opportunity presents itself. The custodial history of the children suggests the children are in desperate need of a legally secure placement, which the Court does not believe can be achieved without granting permanent custody of the children to MCCS. The Court finds the State presented clear and convincing evidence that permanent custody with MCCS is in the best interest of the children. * * *

(Id.).

{¶ 18} Upon review, we see no abuse of discretion in the trial court's best-interest

---

[3] These factors address a parent's convictions, withholding food or treatment, placing a child at risk due to substance abuse, abandonment of the child, and the termination of parental rights with regard to another child.

determination. Although he may have good intentions, clear and convincing evidence in the record reflects that Father is marginally capable of supporting himself, let alone providing for the needs of his children. He has a lengthy history of sporadic employment and unemployment, transience, inadequate housing, and criminal activity. The record also demonstrates that Father's children are in need of care and stability he currently cannot provide. Mother recognized this fact (and her own inability to care for the children) as did the guardian ad litem, Father's caseworker, the children's therapist, and the trial court. Because the trial court's best-interest determination is supported by clear and convincing evidence, we overrule Father's assignment of error.

{¶ 19}   The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Charles W. Slicer, III
Marcy Vonderwell
James Armstrong
Connie Klayko
Ben Swift
Hon. Anthony Capizzi