[Cite as *In re K.L.*, 2014-Ohio-5576.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

IN THE MATTER OF:             :

                                 :       Appellate Case No. 2014-CA-31

     K.L.                   :

                                 :       Trial Court Case No. S44393

                                 :

                                 :       (Juvenile Appeal from

                                 :        Greene County Juvenile Court)

                                 :

                                 :

                           . . . . . . . . . . .

**O P I N I O N**

Rendered on the 19th day of December, 2014.

. . . . . . . . . . .

MARSHALL G. LACHMAN, Atty. Reg. #0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
       Attorney for Appellant-Father, T.L.

STEPHEN K. HALLER, Atty. Reg. #0009172, by BRITTANY M. HENSLEY, Atty. Reg. #0086269, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
       Attorneys for Appellee, Greene County Children's Services

APRIL MOORE, Atty. Reg. #0084711, 260 North Detroit Street, Xenia, Ohio 45385
       Attorney for Appellee, K.L.

JANE HATTERSHIRE, Greene County CASA Program, 2100 Greene Way Boulevard, Xenia, Ohio 45385
       Guardian Ad Litem

. . . . . . . . . . . . .

HALL, J.

{¶ 1} T.L. (Father) appeals from the trial court's judgment entry awarding Greene County Children Services (GCCS) permanent custody of his child.

{¶ 2} In his sole assignment of error, Father contends the trial court erred in granting the agency permanent custody where it failed to prove by clear and convincing evidence that such a disposition was in the child's best interest. The child's mother (Mother) has not filed an appellate brief.

{¶ 3} The record reflects that the child, K.L., was born in May 2012. GCCS became involved the following month due to an act of domestic violence by Father against Mother. In the course of its investigation, GCCS discovered that both parents were addicted to heroin. As a result, K.L. was placed in GCCS's temporary care when she was less than one month old. The child later was adjudicated dependent, and GCCS received temporary legal custody in November 2012. A motion for custody filed by the child's maternal grandmother, R.N., was denied because the agency was seeking reunification and an out-of-state home study had not been completed. Thereafter, in January 2013, GCCS moved for a modification of disposition, seeking to have legal custody awarded to the maternal grandmother. That motion subsequently was withdrawn, however, when Mother and Father revoked their consent to such a disposition and maternal grandmother changed her mind as well.

{¶ 4} In June 2013, GCCS moved for an award of legal custody to Father with protective supervision. The agency withdrew that motion the following month based on concerns about volatility in the Mother and Father's relationship. GCCS received first and second extensions of temporary custody in October 2013 and April 2014. Prior to the second extension of temporary custody, GCCS moved for permanent custody in February 2014, alleging that neither parent had made significant case-plan progress and that an award of permanent custody was in the child's best

interest. Shortly after GCCS filed its motion, maternal grandmother R.N. filed her own motion for legal custody.

{¶ 5} The trial court held a May 14, 2014 evidentiary hearing on the agency's permanent-custody motion and on the maternal grandmother's legal-custody motion. After hearing from witnesses including Mother, Father, maternal grandmother, the child's foster mother, caseworkers, a guardian ad litem, and others, the trial court filed a May 27, 2014 judgment entry sustaining GCCS's motion, denying maternal grandmother's motion, and awarding the agency permanent custody. (Doc. #69). This appeal by Father followed.[1]

{¶ 6} The standards governing permanent-custody determinations are as follows:

R.C. 2151.414 establishes a two-part test for courts to apply when determining a motion for permanent custody to a public services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) granting permanent custody of the child to the agency is in the best interest of the child; and (2) either the child (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(E) are present; (b) is abandoned; (c) is orphaned and no relatives are able to take permanent custody of the child; or (d) has been in the temporary custody of one or more public or private children services agencies for twelve or more months of a consecutive twenty-two month period. * * *

R.C. 2151.414(D) directs the trial court to consider all relevant factors when determining the best interest of the child, including but not limited to: (1) the

---

[1] Neither Mother nor maternal grandmother has challenged the trial court's ruling by participating in this appeal.

interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable.

*In re S.J.*, 2d Dist. Montgomery No. 25550, 2013–Ohio–2935, ¶ 14–15.

**{¶ 7}** Here the trial court made the findings required to award GCCS permanent custody. Specifically, it found, among other things, that K.L. had been in the agency's temporary custody for more than twelve months of a consecutive twenty-two-month period and that an award of permanent custody to the agency was in the child's best interest.[2] On appeal, Father challenges only the best-interest finding, which he claims is not supported by clear and convincing evidence. Based on our review of the hearing transcript, we disagree.

**{¶ 8}** Shortly after GCCS became involved, K.L. was placed in foster care. She had been in foster care with the same family for nearly two years at the time of the trial court's ruling. Testimony from the custody hearing established that K.L. is well bonded with her foster family,

---

[2]In addition to its "twelve in twenty-two" finding, the trial court found that K.L. could not be placed with either parent within a reasonable time and that K.L. had been abandoned. Although the latter two findings also support an award of permanent custody to GCCS, they were unnecessary. The trial court's undisputed finding that K.L. had been in the agency's custody for more than twelve months of a consecutive twenty-two month period satisfied the initial part of the two-part permanent-custody test. *In re S.H.*, 2d Dist. Montgomery Nos. 24619, 24644, 2011-Ohio-4721, ¶ 6.

which includes two other children. K.L. has a number of special needs and physical disorders, which the foster parents are addressing. The foster parents desire to adopt K.L., who refers to her foster parents as "momma" and "daddy." A clinical psychologist testified that K.L would experience significant stress if she were removed from her foster family.

{¶ 9} As for Father, he initially made some progress on his case-plan objectives during the pendency of the proceedings below. However, his problems were not fully addressed or remedied. He became upset in July 2013 when GCCS changed his visits with K.L. from unsupervised to supervised. The change occurred after the agency discovered that Father had begun residing with Mother, who had left town for a while and then returned. The agency was concerned about Father's interaction with Mother given the prior history of domestic violence. The agency also was concerned about Mother's interaction with K.L. given Mother's history of drug abuse. GCCS became particularly upset upon discovering that Father was lying about his continued interaction with Mother. In response to GCCS making his visits with K.L. supervised, Father refused to have any contact with the child. He did not visit K.L. at all between July 2013 and February 2014. He then had two hour-long visits with the child before the permanent-custody hearing. With regard to his drug abuse, Father had positive and negative drug tests through May 2013, with the most recent ones being negative. Thereafter, he refused to submit to any additional drug testing. The record contains testimony, which the trial court credited, that he had continued to use some drugs. At the time of the permanent-custody hearing, Father had just been released from jail after serving a six-month sentence due to probation revocation following a DUI conviction. Father testified at the hearing and admitted he was not yet capable of taking custody of K.L.

{¶ 10} As for Mother, she participated in her case plan for a while before dropping out and moving to Tennessee. She then returned and restarted her case plan. She committed a crime after

returning to Ohio, however, and was convicted of felony theft. While in jail for the theft, Mother admitted to a case worker that she recently had taken cocaine and Adderall and would test positive. At the time of the May 2014 permanent-custody hearing, Mother had not seen K.L. since July 2013. Mother testified that she was serving a prison sentence for the theft and that she would not be released until September 2014. Mother admitted she was not then capable of taking custody of K.L.

{¶ 11} With regard to the maternal grandmother, R.N., the record reflects that her home and resources were adequate to provide for K.L. She lived in Tennessee, however, and had seen the child only once or twice. As a result, K.L. had no relationship with R.N., who admitted that the child did not know her. Although R.N. expressed a willingness to establish a relationship with K.L. over time, she acknowledged that frequent travel from Tennessee to Ohio would be difficult.

{¶ 12} After considering and discussing the evidence before it, including a guardian ad litem's recommendation of permanent custody to GCCS, the trial court concluded as follows:

> Although Ohio law directs the Court to give consideration to placing a child, whenever possible, in a family environment, the controlling factor in determining whether to grant an agency's request for permanent custody is that outcome which serves the best interest of the child. While [maternal grandmother] presents herself as an available relative placement, during the nearly two-year period which [K.L.] has lived with the foster parents, during which time the agency was attempting to reunify the child with one or both of her parents, [K.L.] has developed a strong attachment and bond to the foster family. She loves them and interacts with [them] as if they were her parents. She is in a loving, caring environment and to remove her from this environment would be traumatic for her.

That would not be in the child's best interest. It is in the child's best interest to be in the permanent custody of the agency.

(Doc. #69 at 4-5).

{¶ 13} On appeal, Father's entire argument to the contrary is as follows:

In the case at bar, though the child had been in the custody of CSB for twelve or more months of a consecutive twenty-two month period, there was simply no other credible evidence to support the trial court award of permanent custody to CSB. The evidence does not support the court's finding that Father had abandoned his child. To the contrary, Father was engaged with CSB and moving toward regaining custody until July, 2013 when the agency made the unsupported decision to require that Father's visits again be supervised. Father's decision to cease visits at that point in time for several months does not constitute abandonment as the trial court found. In addition, the evidence at the hearing clearly established that Father had completed most case plan objectives and was in fact in a position to regain custody of the child within a reasonable amount of time. In awarding CSB permanent custody of K.L. and terminating Father's protected liberty interest in the care and custody of his child, the trial court ignored the progress Father had made in resolving the issues that led to the child's initial removal and was not supported by clear and convincing evidence. Therefore, the decision of the trial court granting permanent custody of the child to CSB should be reversed.

(Appellant's brief at 10).

{¶ 14} Upon review, we find Father's argument unpersuasive. Given that K.L. had been in

GCCS's custody for more than twelve months of a consecutive twenty-two month period, the trial court's abandonment finding was unnecessary to the initial part of the two-part custody test set forth above. *See* footnote two supra. Furthermore, even if K.L. could have been placed with either parent within a reasonable time,[3] once the trial court found the "twelve in twenty-two" requirement satisfied, the only remaining issue was the best interest of K.L. *In re M.R.*, 2d Dist. Greene No. 2010 CA 64, 2011-Ohio-3733, ¶ 25 ("If the child has been in the custody of the children services agency for twelve or more months of a consecutive twenty-two month period at the time the motion for permanent custody is filed, the court need only determine whether permanent custody is in the child's best interest. * * * The court need not consider whether the child can be placed with either parent within a reasonable time[.]").

{¶ 15} We recognize, however, that abandonment, if it existed, remained a relevant best-interest consideration. *In re M.W.,* 2d Dist. Montgomery No. 26107, 2014-Ohio-3061, ¶ 16 fn. 3*; In re S.B.*, 2d Dist. Greene Nos. 2014 CA 19, 2014 CA 20, 2014-Ohio-4710, ¶ 81. Contrary to Father's argument, the record supports the trial court's abandonment finding. Under R.C. 2151.011(C), "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Here the record reflects that neither parent saw K.L. at all between July 2013 and February 2014 despite the fact that supervised visitation was not prohibited. Additionally, insofar as Father's case-plan progress remained relevant to the best-interest calculation, we are unpersuaded that it weighed much in his favor.

---

[3]Parenthetically, we are unpersuaded by Father's argument that K.L. could have been reunited with either parent within a reasonable time. Mother still had several months to serve on her prison sentence, and she had admitted still using drugs. Father had just been released from jail the day before the hearing, he had been implicated in drug use, he had refused to undergo drug tests, and he had seen K.L. very little.

Father served a six-month jail sentence and was released one day before the permanent-custody hearing. The record contains evidence that Father had continued to use drugs until shortly before his incarceration. The trial court found this evidence credible, while also noting Father's on-going refusal to submit to drug testing. As set forth above, Father himself conceded that he was not yet capable of taking custody of K.L.

{¶ 16} In short, after examining the record and considering the applicable best-interest factors, we find clear and convincing evidence to support the trial court's determination that an award of legal custody to GCCS was in K.L.'s best interest. This conclusion is supported by the evidence of K.L.'s interaction and interrelationship with the foster parents, Father, Mother, and maternal grandmother. K.L. had resided with her foster family for nearly two years, she was bonded with the family, and her special needs were being met. K.L. rarely had seen Mother or Father, and she did not know maternal grandmother at all. The trial court's conclusion also is supported by K.L.'s custodial history with GCCS, which included two extensions of temporary custody, and her need for a legally secure permanent placement, which the record demonstrates could not be obtained without a grant of permanent custody to GCCS.

{¶ 17} For the foregoing reasons, we overrule Father's assignment of error and affirm the trial court's judgment.

. . . . . . . . . . . . .

FAIN, J., and WELBAUM, J., concur.

Copies mailed to:

Stephen K. Haller
Brittany M. Hensley
Marshall G. Lachman

April Moore
Jane Hattershire
Hon. Robert W. Hutcheson