**[Cite as *In re C.P.*, 2018-Ohio-1862.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| C.P., JR. | : | Appellate Case No. 2017-CA-48 |
| | : | |
| | : | Trial Court Case No. 2015-147 |
| | : | |
| | : | (Civil Appeal from Domestic |
| | : | Relations/Juvenile Court) |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of May, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
        Attorney for Plaintiff-Appellee

KIRSTEN KNIGHT, Atty. Reg. No. 0080433, P.O. Box 137, Germantown, Ohio 45327
        Attorney for Defendant-Appellant/Father C.P. Sr.

JEFFREY GRAMZA, Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
        Attorney for Appellee/Mother

. . . . . . . . . . . .

HALL, J.

{¶ 1} On April 18, 2017 the Juvenile Section of the Domestic Relations Division of the Clark County Common Pleas Court granted permanent custody of two children, R.D., who was almost five years old at the time of the decision, and C.P., who was born in December 2007, to the Clark County Department of Job and Family Services. The children have the same mother. Father of R.D. did not participate in the court proceedings and was not represented by counsel. Mother appeared, with counsel, and testified. Father, C.P. Sr., who has been in prison since April 2009 serving a sentence of more than nine years, was represented by counsel but was not present. Only Father (C.P. Sr.) appealed from the trial court's grant of custody of the children to CCDJFS.

{¶ 2} Father appeals from the trial court's April 18, 2017 judgment entry. Father's assigned appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that "counsel cannot find any meritorious issues for appeal." (Brief of Appellant at 1). Counsel concludes the brief with a request for permission to withdraw because the appeal is frivolous. By order dated October 31, 2017, we informed Father of the *Anders* filing and advised him of his right to file his own brief and the time limit for doing so. Father has not filed anything, and the time for filing has expired.

{¶ 3} Although Mother did not file an appeal, or a notice of cross-appeal, she filed an appellee's brief on April 2, 2018. That brief contains an assignment of error asserting that the State failed to prove the award of permanent custody to CCDJFS is in the best interest of the "children" and failed to prove that the "children" could not be placed with Mother within a reasonable time.

**The Facts and Course of Proceedings**

{¶ 4}  On November 16, 2016 CCDJFS moved to modify the court's previous order of temporary custody of C.P. Jr. to an order of permanent custody. The motion reflects that the child had been in emergency shelter care of CCDJFS since July 8, 2016, and temporary custody was ordered July 22, 2016. From July 8, 2016 until November 16, 2016 is four months and one week. The child had previously been in the custody of CCDJFS from February 11, 2015 through December 21, 2015, a period of ten months and ten days. It is undisputed that before the filing of the complaint the child was in the custody of CCDJFS for twelve or more months of a consecutive twenty-two month period. *See* R.C. 2151.413(D)(1).

{¶ 5}  Father had entered pleas to five counts of breaking and entering and four counts of safe cracking, all felonies, and six other indicted charges were dismissed in exchange for his pleas. He received an agreed aggregate nine-year prison sentence on April 20, 2009 when his son was less than one and a half years old. On September 16, 2010 he received an additional consecutive six-month prison term for another breaking and entering charge. His release date is May 15, 2018. According to Mother, Father has not seen the child "since he was one years old" (T. 202), although she did not know whether other family members may have taken the child to visit Father in prison.

{¶ 6} Father never indicated, requested, or argued that custody of the child should be returned to Mother. Instead, he requested that custody be awarded to his mother, S.R., who lived in Texas. He indicated "I will be relinquishing my parental rights to [S.R.]" (Doc. #89). However, CCDJFS had initiated a home study in Texas through the interstate compact, but paternal grandmother was not approved. Grandmother had not appeared in

the action and did not file a motion for custody. Father also requested that the foster family should retain temporary custody and that the court proceedings be continued until he got out of prison, anticipated to be May 15, 2018, so he could develop a relationship with his son and obtain custody. (Doc. # 97 and Father's Exhibit #2). The trial court denied the request to delay the spring of 2017 trial, indicating that Father's release "could possibly be another year or year [and] a half," and noting that there was no evidence that delay for Father to "potentially" develop a relationship would be in the best interest of the child. (Doc. #120).

{¶ 7} The child's foster parent testified that the child had never made comments about talking with his dad. And, he has never talked about his grandmother in Texas. The record does not demonstrate that either had any relationship with the child.

{¶ 8} The appointed Guardian Ad Litem filed a report that recommended the motion for permanent custody be granted. The child had previously been found to be dependent, and this finding was reaffirmed by the trial court as a result of the permanent custody hearing.

{¶ 9} With regard to the evidence about whether Mother's parental rights should be terminated pertinent excerpts from the trial court findings, all of which are amply supported by the record, are as follows:

> She has been involved with children services for five to six to seven to eight years depending on how one counts. She has been tolerable and acceptable a few times during that time, but has more frequently been irresponsible, absent, or down right neglectful and abusive.

* * *

She acknowledged that she was not ready to take custody of the children at the time of the hearing, and requested an additional six months to make the changes she pledged she could and would make. She has previously made the same request for more time throughout the years that the children have been in care.

* * *

The counselor mother was seeing in 2015 further summarized the mother's issues by noting, "that this client experiences mood disorder as evidence[d] by her reports of frequent mood swings, frequent anger outburst, dysfunctions in personal relationships, frequent feeling of fatigue, frustration, limitations, and focus, concentration and motivation."

* * *

CCDJFS experimented with returning placement of the children to her, as she was supposedly more stable, was employed, was in counseling and maintaining an appropriate house. That experiment didn't work and the children were removed from her again in 2016.

* * *

The mother also sought treatment at Wells Springs counseling organization in 2016. She went to multiple sessions, but the discharge summary reads, "progression was minimal due to sporadic attendance, clinician notices slight decrease in anger prior to client's case being close[d] for not keeping appointments."

* * *

A troubling episode occurred later in 2016 when mother's anger boiled over and she threat[en]ed bodily harm, assault and violence to her caseworker and to other care providers. Her threats were deemed so significant that law enforcement officials were required to be present during interactions between caseworker and mother for a period of time.

* * *

The mother has a substantial criminal record involving multiple offenses over a number of years. She has a number of disorderly conduct, domestic violence and child endangering charges and convictions. She lives on the edge of the law and often rolls off on the wrong side. To one charge, many years ago, she entered a plea of not guilty by reason of insanity.

* * *

The mother had repeated opportunities to change, had repeated people pulling for her, had repeated options to seek treatment and counseling with repeated failures to follow through. Mother recently admitt[ed] to her faults and failings and yet she is seemingly powerless to make changes. At the time of the trial she was hopeful and desired reunification. Yet she did not have sufficient income, housing or employment to meet the needs of her children. She has not changed from the belligerent, difficult wom[a]n that blames others for her own failings. There is no indication that mother will change at any time in the near future.

(Doc. #120, at 3-7).

**Nature of Father's Appeal**

{¶ 10} The trial transcript involved custody of two of Mother's children. The second child, R.D., is not Father's child, but his statements to the court, Father's Exhibits 1 and 2, indicate that he or his mother is willing to accept custody of his son's half-brother. Neither Father, nor his mother have any legal claim to custody of the younger child. Neither filed a motion for custody of that child and they, therefore, have no standing. Accordingly, Father's appeal only applies to the grant of permanent custody of his son.

**Mother's Assignment of Error**

{¶ 11} Mother did not file an appeal and did not file a notice of cross appeal as required by either App.R. 3(A) or (C)(1). App. R. 3(C)(1) provides that "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * * shall file a notice of cross appeal within the time allowed by App.R. 4." Mother seeks to change the trial court's order by arguing that the termination of *her* parental rights is erroneous. Therefore, she was required to file a notice of appeal within thirty days of the entry of the trial court's order or a notice of cross appeal within thirty days of the judgment or within ten days of the filing of Father's notice of appeal, whichever is later. App.R. 4(A) and (B)(1). Because she did not do so, we do not have jurisdiction to consider her "assignment of error." *Carnahan v. Weeks*, 2d Dist. Montgomery No. 17302, 1999 WL 317192 (May 21, 1999), *3. (Citations omitted). Moreover, as indicated regarding Father's appeal, his appeal is limited to custody only of his child. Mother, as appellee, cannot expand Father's appeal of C.P.'s custody to include custody issues of her other child for whom there is no appeal.

**Potential Assignments of Error**

{¶ 12} In the *Anders* brief, although counsel concludes that the appeal is frivolous, counsel asks us to review a potential assignment of error that CCDJFS failed to prove that permanent custody was in the best interest of the child and that no relatives were "present" to take custody. We cannot help but note the trial court's conclusion that Father will be in prison until May 15, 2018. The child was nine at the time of the April 18, 2017 permanent custody judgment entry, and the child "had no meaningful relationship with his father. The child does not know his father to be his father, and the child does not rely upon [Father] for emotional, physical, psychological or moral support." (Doc. 120 at 1). These conclusions are overwhelmingly supported in the record.

{¶ 13} Father's contention at trial was that he wanted more time to develop a relationship with his child after his release. In our opinion, an argument that the trial court abused its discretion by denying that request has no arguable merit. CCDJFS was involved with Mother regarding C.P. at least since in 2009, and C.P. was originally removed from her care in December 2010. After an unsuccessful placement, temporary custody was made with a maternal cousin in Dayton in August 2011. That relative, unbeknownst to the agency, allowed the child to stay with a maternal aunt in Dayton beginning around October 2014. The current case was instituted in February 2015 when it was learned that the child recently had been returned to Mother and had not been attending school since October 2014. The child was removed from Mother's care at that time. An attempt to reunify Mother and child was made beginning December 21, 2015, although under a protective-supervision order. But the child was again removed to CCDJFS's custody on July 8, 2016 and temporary custody was again ordered on July 22, 2016. The permanent custody motion was filed on November 16, 2016.

{¶ 14} The foregoing dates of the child's custody are undisputed in the record. Although the trial court did not make a specific finding as to cumulative agency custody, at the time of the filing of the complaint the child was in the custody of CCDJFS for twelve or more months of a consecutive twenty-two month period. *See* R.C. 2151.413(D)(1). Under those circumstances, the only issue for the trial court is the best interest of the child and a determination whether the child could be placed with a parent within a reasonable time is unnecessary. *In re A.U.*, 2d Dist. Montgomery Nos. 20583, 20585, 2004-Ohio-6219, ¶ 26. The fact that the trial court also made an unrequired determination that the child could not be placed with either parent does not invalidate its ultimate best-interest decision. *In re S.H.*, 2d Dist. Montgomery Nos. 24619, 24644, 2011-Ohio-4721, ¶ 9. Nonetheless, the trial court determined that the child could not be returned to a parent within a reasonable time, and the record soundly supports that conclusion.

{¶ 15} Passage of time in child custody cases is restricted. R.C. 2151.415(D)(4) prohibits an agency from more than two extensions of temporary custody or from ordering temporary custody beyond two years. Appeals are automatically "expedited." App. R. 11.2(C). The Ohio Supreme Court has commented " '[t]here is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, quoting *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 513-514, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). Given those concerns, on this record it is frivolous to suggest that the trial court abused its discretion in proceeding with the trial and to judgment.

{¶ 16} The second part of Father's request for delay, so that his mother could be considered as custodian, or the trial court's failure to consider his mother also has no arguable merit. First, CCDJFS initiated a home study for paternal grandmother in Texas even though there is no evidence that she had any relationship whatsoever with the child. Texas denied approval on January 13, 2017. (State's Ex. B & C). More importantly, paternal grandmother did not intervene and file a motion to gain custody as required by R.C. 2151.353(A)(3). That section only allows a court to award custody to a person who "files a motion requesting legal custody" or is identified "in a complaint or motion * * * as a proposed legal custodian." And, that person must sign a "statement of understanding" that custody is intended to be permanent, that the party assumes legal responsibility for care and supervision of the child, and that the person "must be present in court." None of those events occurred with respect to paternal grandmother, making any argument that the court should have awarded her custody frivolous.

### *Anders* Review

{¶ 17} We also have performed our duty under *Anders* to conduct an independent review of the record. We thoroughly have reviewed the docket, the various filings, the written transcripts, including the trial and exhibits introduced. In light of Mother's appellee brief, arguing whether termination of *her* parental rights is supported by clear and convincing evidence, we also have considered whether that is a non-frivolous argument that Father could have raised in *his* appeal. It is not. Through his attorney Father never took the position at trial that Mother should be custodian, never claimed that she was capable of caring for the child, and never presented any evidence that it was in the best interest of that child for her to retain her parental rights. It would be frivolous for him to do

so now because he cannot raise the issue for the first time on appeal, and he has no standing to pursue her claim regarding her rights. Accordingly, our independent *Anders* examination of the record reveals no non-frivolous issues for appellate review. Accordingly, the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Andrew P. Pickering
Kirsten Knight
Jeffrey Gramza
C.P. Sr.
R.D.
Virginia Angus-Hall
Hon. Joseph N. Monnin